■ GARY T. FALLON et al., Appellants, v NATHAN G. BERNEY et al., Respondents.—Weiss, P. J. Appeal (transferred to this Court by order of the Appellate Division, Second Department) from an order of the Supreme Court (Miller, J.), entered July 3, 1991 in Orange County, which, inter alia, granted defendants' motion for summary judgment dismissing the complaint.

Plaintiffs invested a considerable amount of money and time in preparing preliminary plans for the development of three parcels of property located near Stewart Airport in the Town of Newburgh, Orange County, on which they held purchase options. By May 31, 1988, the expiration date on the final extension of the option on the key parcel (the Colandrea parcel), plaintiffs lacked funding to complete the closing.

Faced with a total loss of their investment, plaintiffs approached defendant Favish Langsam on May 1, 1988 as a potential investor. Langsam in turn introduced plaintiffs to defendant Samuel Margaretten on May 10, 1988. Plaintiffs were able to procure a 29-day "time is of the essence" extension on the option. Langsam and Margaretten contacted defendant Nathan G. Berney (hereinafter Berney) and defendant Jeanette Berney, and a meeting was scheduled for June 5, 1988 at plaintiffs' offices. Also attending the meeting were plaintiff Gary T. Fallon's wife and Benjamin Hager, an attorney brought by Margaretten. The parties reached an investment agreement which was reduced to a writing. Plaintiffs had their signatures acknowledged on June 13, 1988 and forwarded a copy to Hager for circulation and execution by the individual defendants. Another meeting was scheduled for June 28, 1988, at which time Berney, Margaretten and Langsam insisted upon an addendum prior to their joining the agreement.

The agreement finally reached provided that plaintiffs would each receive 12.5% of the shares of a corporation to be formed, defendant Epic North Development Inc. (hereinafter Epic), and Berney would receive 75% of Epic's shares which he could reallocate to Margaretten and Langsam. Berney agreed to advance a one-year interest-bearing loan of $790,000 to Epic which was to be secured by a chattel mortgage on the corporate shares and, at Berney's option, a mortgage upon land acquired by Epic. Berney's funds were to be used to purchase the Colandrea parcel, to make down payments on the other two parcels, and the final $100,000 to provide operating expenses for Epic. The agreement also provided for restrictions on the transferability of shares and that Fallon would be retained as a consultant to Epic at a salary of $650 per week.

The agreement's addendum provided that in the event a judgment in excess of $10,000 was entered against plaintiffs and remained unsatisfied for 90 days, or in the event plaintiffs became involved in bankruptcy proceedings which were not terminated within 60 days, the shares of stock in Epic owned by them could be purchased by Berney.

After the agreement was finalized, Epic closed title on the Colandrea parcel, met the financial obligations on the other two parcels, and retained Fallon as its consultant. However, delays in the land development and lack of refinancing caused Epic to suffer financial distress and Epic was unable to repay the Berney loan, which required Berney to advance Epic

further funds. By April 1, 1991, Berney had loaned $1,284,200 to Epic. Ultimately, Berney commenced a foreclosure proceeding on the Epic stock held by plaintiffs.

Plaintiffs commenced this action alleging, *inter alia,* that the contract with defendants was unconscionable. Plaintiffs seek rescission of the contract, the imposition of an equitable trust on Epic's real estate interests, an accounting and damages. Supreme Court granted defendants' motion for summary judgment dismissing the complaint, giving rise to this appeal.

Plaintiffs contend that the agreement is unconscionable and they are entitled to rescission. To be found unconscionable, a contract must be so grossly unreasonable in the light of the mores and business practices of the time and place as to be unenforceable *(Sablosky v Gordon Co.,* 73 NY2d 133, 138). A determination of unconscionability is generally based upon two aspects, procedural (i.e., the absence of meaningful choice) and substantive (i.e., contract terms unreasonably favorable to the other party) *(Gillman v Chase Manhattan Bank,* 73 NY2d 1, 10).

Defendants have demonstrated that the June 5, 1988 meeting and resultant memorandum were neither procedurally nor substantively unconscionable. While plaintiffs may very well have been in an awkward situation and facing the imminent loss of their entire investment, their circumstances were not of defendants' making. On the other hand, defendants, particularly Berney, had been pressured to enter the project on quite limited notice, with significant financial risk and with unfamiliar partners. The sole capitalization for Epic came from the Berney loans, which in order to be repaid required that the project proceed to completion. The other shareholders had no equity in Epic. Plaintiffs continued to participate as owners of 25% of the project, subject to the loans, and Fallon continued as a paid consultant. The addendum to the contract came on the eve of the initial closing and while it might have the appearance of procedural unconscionability, an analysis of the provisions fails to demonstrate that the terms were unconscionable. The addendum provides that Epic could purchase plaintiffs' shares for $100 in the event *both* plaintiffs had a judgment against them in excess of $10,000 which remained unsatisfied for 90 days, or in the event *both* plaintiffs were subject to bankruptcy proceedings which were not terminated within 60 days, and then only upon plaintiffs' failure to remedy such situation within 10 business days after a formal notice from Epic. While it is clear that the parties were aware that plaintiffs were financially unable to proceed with the

project, there has not been a showing that plaintiffs were likely to face a major judgment or bankruptcy. Only in the event of such circumstances would plaintiffs' shares be at risk of judgment execution or bankruptcy sale, either of which would obviously be undesirable from defendants' prospective.

In view of the evidence submitted by defendants in support of the motion, it became incumbent upon plaintiffs to make at least an evidentiary showing that an issue of fact existed. In opposition to a motion for summary judgment, a party must assemble and lay bare affirmative proof to establish that the matters alleged are real and capable of being established upon a trial (*Zuckerman v City of New York,* 49 NY2d 557). The conclusory allegations of duress, fraud and conspiracy made by plaintiffs are inadequate to raise an issue of fact as to whether the agreement was unconscionable or subject to rescission.

Finally, the chattel mortgage was not itself unconscionable and represents Berney's right as an individual to be secured on his loan. His foreclosure based upon the admitted past due nature of the loans did not give rise to plaintiffs' right either to an equitable trust on corporate assets or entitlement to a corporate accounting. Nor was the individual relationship of Berney to plaintiffs fiduciary in nature (*see,* 1 NY Jur 2d, Accounts and Accounting, § 30, at 183). In light of defendants' prima facie showing of entitlement to summary judgment and because plaintiffs failed to factually establish the existence of a material issue requiring trial (*see, Alvarez v Prospect Hosp.,* 68 NY2d 320, 324), Supreme Court properly granted summary judgment on the cause of action seeking rescission.

Levine, Mahoney, Casey and Harvey, JJ., concur. Ordered that the order is affirmed, with costs.